UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSES SANTOS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SCOTT KERNAN, et al,<br><br>　　　　Defendants. | **Case No.: 1:18-cv-01609 JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CASE WITHOUT LEAVE TO AMEND**<br>**(Doc. 1)**<br><br>**DISTRICT JUDGE TO BE ASSIGNED**<br><br>**FOURTEEN-DAY DEADLINE** |

Plaintiff has filed a complaint asserting claims against the Director of the California Department of Corrections and Rehabilitation. (Doc. 1.) Generally, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

I. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader

1

is entitled to relief. . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiffs must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 677-78.

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

Under section 1983 the plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

At all times relevant to this action, plaintiff was a state inmate housed at North Kern State Prison ("NKSP") in Delano, California. He names as defendants Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation; Kelly Santoro, NKSP Warden; Arce, Facility Captain; and John Does 1 through 100. Each of these defendants is sued in his or her personal capacity for $50,000,000 in damages.

Plaintiff's allegations can be fairly summarized as follows:

By way of background, plaintiff describes two channels through which CDCR inmates travel: the "Mainline" or "Active" channel, which includes those placed in general population, and the Sensitive Needs Yard ("SNY"), which includes those inmates who cannot be placed in general population due to safety issues. These safety issues may arise from past participation in gang activity, those who testified against codefendants, and/or those convicted of sex crimes. If given the chance, general population inmates will injure or kill an SNY inmate.

Each of the defendants is aware of the safety issues involved in placing SNY inmates into the general population. Despite this knowledge, defendant Scott Kernan implemented a new policy of integration called the "Non-Designated Programming Facility" ("NDPF") at NKSP, a Minimum Support Facility, with the expectation that general population and SNY inmates will program together.

On May 31, 2018, plaintiff, presumably a SNY inmate, was in his cell when Captain Arce announced mandatory yard. When plaintiff and the other SNY inmates went outside, he noticed several custody staff there in riot gear. Plaintiff sat down on some benches with some of the other inmates. After several minutes, 34 general population inmates entered the yard pursuant to the new NDPF policy. Seventeen of these inmates lined up in front of the work change office, placed their belongings on the ground, and ran at plaintiff and the other inmates sitting on the benches. A riot ensued, which had to be quelled by use of "block guns" (a type of grenade launcher that fires handball-size rubber projectiles) and "super soakers" (large cannisters of pepper spray). Plaintiff was injured during the riot. One projectile from the block gun tore into his right forearm and another broke the bone in his right thumb and severed the tendon.

Plaintiff claims the defendants were aware of the danger of mixing these two groups of inmates as revealed by the fact that custody staff were in riot gear outside. Their deliberate intermingling of these two groups violated plaintiff's Eighth Amendment rights. He also suggests that the riot was staged because he witnessed several officers holding up recording devices before the assault, and there were no orders to get down or yard recall when the general population inmates ran towards the SNY inmates.

According to a Crime / Incident Report attached to the complaint and drafted by a non-party correctional officer present at the riot, plaintiff was identified as one of three inmates seen striking a fourth inmate repeatedly in the head and upper torso. See Compl. Attach. (Doc. 1 at 36). Per this report, this fourth inmate "was in the fetal position covering his head with arms trying to protect his head." Because the CO was concerned about serious bodily injury to the fourth inmate, the CO aimed the block gun at plaintiff and fired a shot. This shot did not have the desired effect, and plaintiff continued striking the fourth inmate. The CO fired again, and this stopped the attack.

Following the incident, plaintiff was issued a Rules Violation Report for Participation in a Riot. He was placed in administrative segregation, assessed 180 days good time credit, and transferred to another facility.

### III.     Discussion

The Court must begin its review of plaintiff's complaint by addressing the effect of plaintiff's guilty finding for Participation in a Riot under the favorable termination doctrine. The "favorable termination" doctrine applies to civil rights actions filed against state actors under 42 U.S.C. § 1983. Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). The doctrine bars a plaintiff's § 1983 suit, "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the plaintiff first proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 487. The favorable termination doctrine may also apply to an inmate's claims that challenge the results of a prison disciplinary proceeding if the prospective relief sought will necessarily imply "the invalidity of a previous loss of good time credits." Edwards v. Balisok, 520 U.S. 641, 648-49 (1997). But insofar as the disciplinary action affects only a condition of confinement and not the sentence itself, the favorable termination doctrine does not apply. Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003). The doctrine does not prohibit a civil rights claim if the claim does not necessarily implicate the underlying disciplinary action. See Sevilla v. Maldonado, 2017 WL

4325343, at *2 (S.D. Cal. Sept. 29, 2017) (citing Muhammad v. Close, 540 U.S. 749, 754-55 (2004)).

Plaintiff accuses the defendants of violating his Eighth Amendment rights by knowingly placing him in a situation attendant with a heightened risk of serious injury. At the same time, plaintiff was found guilty of participating in a riot and assessed good time credits. The question then is whether his claim would necessarily imply the invalidity of the disciplinary proceeding. "[A] plaintiff's claims are barred when they depend or rely on a theory that calls into question whether he committed the offense for which he was convicted." Hodge v. Gonzales, Case No. 1:15-cv-01618-AWI-BAM (PC), 2017 WL 931829, at *5 (E.D. Cal. Mar. 9, 2017); see also Farley v. Virga, Case No. 2:11-cv-1830 KJM KJN P, 2013 WL 3992392, at *6 (E.D. Cal. Aug. 1, 2013) ("[P]laintiff cannot demonstrate that prison officials were deliberately indifferent to a substantial risk of harm if plaintiff initiated the harm."); Garces v. Degadeo, Case No. 1:06-cv-1038-JAT, 2010 WL 796831, at *1 (E.D. Cal. Mar. 5, 2010) (failure to protect claims barred because plaintiff's claim that defendants failed to protect him from his cellmate contradicted his rules violation conviction for mutual combat with that same cellmate).

To succeed on his claim, plaintiff would need to show that the defendants knew of and disregard a substantial risk of serious harm to SNY inmates through the new integration policy, and that their conduct caused plaintiff's injuries. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005). Success on this claim, however, would necessarily call into question the determination that plaintiff played an active role in the riot by repeatedly striking another inmate and that, as a result of his own conduct, he was struck twice by a block gun.

This case is reminiscent of Garces, supra, in which the prisoner brought an Eighth Amendment claim against the defendants for failing to protect him from his cell mate's attack. 2010 WL 796831, at *1. Garces claimed that he informed one of the defendants that he was having issues with his roommate but that he could not fight due to a shoulder injury. Six days later, Garces and his cell mate began striking each other as they exited their cell. Garces was found guilty of mutual combat and lost ninety days of good time credits. At summary judgment, the court

found that to prevail on the failure to protect claim, Garces would have to negate an element of the mutual combat violation, that is, Garces "would have to prove that he did not engage in 'mutual combat,' but that his cellmate attacked him." Id. at *3. Like Garces, plaintiff here would have to prove that he did not participate in the May 31, 2018, riot, but that he was a victim of it[1], which he cannot prove without implicating the validity of the prison disciplinary.

**IV. Conclusion**

Based on the foregoing, the Court **DIRECTS** the Clerk of the Court to assign a district judge to this case. Also, the Court **RECOMMENDS** that this case be dismissed pursuant to Heck v. Humphrey, 512 U.S. 477 (1994).

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

   Dated: __May 2, 2019__             __/s/ Jennifer L. Thurston__
                                                          UNITED STATES MAGISTRATE JUDGE

---

[1] Any suggestion that the plaintiff was simply defending himself is belied by the account attached to the complaint which demonstrated he acted in concert to beat a man who was on the ground, lying in a fetal position. This leads to an inference that, though the plaintiff may not have wanted the riot to occur, once it started, he was a willing participant in it.

6